UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WAUSAU UNDERWRITERS
INSURANCE COMPANY,

    Plaintiff,

v.                                    CASE NO. 3:17-cv-723-J-34JBT

ECONOSWEEP & MAINTENANCE
SERVICES, INC., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant Countryside Power Sweeping, Inc.'s ("Countryside") Motion to Dismiss Plaintiff's Complaint ("Motion") (Doc. 8) and Plaintiff's Response thereto (Doc. 14). The Motion was referred to the undersigned for a report and recommendation regarding an appropriate resolution. (Doc. 26.) For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion be **DENIED**.[2]

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

[2] This recommendation is based solely on the allegations of the Complaint, which
(continued...)

**I.     Background**

On October 29, 2013, Melissa Clodfelter slipped and fell on a sidewalk at the Lake City Mall. (Doc. 1 at 1, 3, 5; Doc. 1-4.) She filed a personal injury action in state court against the owner of the mall, Hull Storey Retail Group, LLC ("Hull Storey"), and the companies allegedly responsible for cleaning the sidewalks, Econosweep & Maintenance Services, Inc. ("Econosweep") and Countryside (the "State Action").[3] (*See id.*) Plaintiff defended and indemnified Hull Storey, its named insured, in the State Action under a commercial general liability insurance policy. (Doc. 1 at 1, 4.) Following a jury trial, judgment was entered against Hull Story in the amount of $775,963.37, and Plaintiff ultimately paid $520,000.00 in satisfaction of the judgment.[4] (*Id.* at 5; Doc. 1-5.)

Plaintiff now files this subrogation action against Econosweep, Countryside, and their respective insurers, Scottsdale Insurance Company ("Scottsdale") and American Empire Surplus Lines Insurance Company ("American Empire"). (Doc. 1.) Plaintiff alleges in substance that one or more of the Defendants should have defended and indemnified Hull Storey in the State Action. (*Id.* at 2.) Plaintiff alleges

---

[2](...continued)
the Court must accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, it does not control future recommendations or rulings on motions where the Court may consider evidence. *See* Fed. R. Civ. P. 56.

[3] *See Clodfelter v. Hull Storey Retail Group, LLC*, Case No. 15-CA-34, filed in the Circuit Court of the Third Judicial Circuit in and for Columbia County, Florida.

[4] Econosweep and Countryside settled the claims against them prior to trial. (Doc. 1 at 5.)

the following causes of action: Count I - Breach of Contract against Econosweep; Count II - Breach of Contract against Countryside; Count III - Common Law Indemnity against Countryside; Count IV - Breach of Contract against Scottsdale; and Count V - Breach of Contract against American Empire.

## II. Standard

Under Rule 12(b)(6), the Court must determine whether the Complaint sets forth sufficient factual allegations to establish a claim upon which relief can be granted. In evaluating whether Plaintiff has stated a claim, the Court must determine whether the Complaint satisfies Rule 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 679; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III. Analysis

### A. Count II

In Count II, Plaintiff alleges a claim for breach of contract against Countryside based on a services contract between Plaintiff's insured, Hull Storey, and Countryside. (Doc. 1 at 6–7.) Countryside argues that Plaintiff has failed to state a claim against it because Plaintiff has not sufficiently alleged that Plaintiff was a party to, or a third-party beneficiary of, the subject contract, or that Plaintiff was assigned rights from the beneficiary of the subject contract. (Doc. 8.) The

3

undersigned recommends that this argument be rejected because Plaintiff's breach of contract claim against Countryside is based on its conventional subrogation rights with Hull Storey.

Regarding subrogation:

> Under Florida law, subrogation is a cause of action in equity which is designed to afford relief to one who is required to pay a legal obligation of another. Florida recognizes two types of subrogation: conventional subrogation and equitable or legal subrogation. Conventional subrogation arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor. . . .
>
> In practice, subrogation entails the substitution of one person in the place of another with reference to a lawful claim or right. In the insurance context, the insurer is put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer.

*Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1286 (M.D. Fla. 2017) (citations and quotations omitted).[5]

According to the Complaint, Plaintiff issued a commercial general liability insurance policy to Hull Storey with a policy period from June 1, 2013 to June 1, 2014. (Doc. 1 at 4.) That policy provided in part that "[i]f [Hull Storey] has rights to recover all or part of any payment [Wassau has] made under this Coverage Part,

---

[5] In this diversity case, Florida substantive law applies. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

4

those rights are transferred to [Wassau]." (*Id.*)

On June 1, 2012, the mall's property manager, Hull Storey Gibson Companies, LLC, entered into an automatically renewing services contract with Econosweep for parking lot and sidewalk cleaning services. (*Id.* at 3–4; Doc. 1-1.) The contract generally provided in part that Econosweep would defend and indemnify Hull Storey against any claims arising out of Econosweep's performance, or non-performance, of the subject services. (*Id.*) Plaintiff alleges that in April 2013, "Countryside, along with an individual named Brian Carney, purchased 70% of the authorized, issued, and outstanding common stock of Econosweep. Thereafter, Countryside sent invoices for services performed in accordance with the Services Contract." (*Id.* at 4.)

In Count II, Plaintiff alleges:

> Before October 29, 2013, either Econosweep transferred its rights and obligations under the Services Contract to Countryside, or Hull Storey, Econosweep, and Countryside effectuated a novation of the Services Contract by agreeing to a new Services Contract containing the same terms as the prior Services Contract, with the sole exception that Countryside would be the Contractor and would replace, and extinguish, Econosweep as the Contractor.

(*Id.* at 6.) Plaintiff further alleges that Hull Storey's liability in the State Action arose out of Countryside's performance, or non-performance, under the services contract, that Countryside breached that contract by failing to defend and indemnify Hull Storey in the State Action, and that Hull Storey and/or Plaintiff was damaged by the

5

breach. (*Id.* at 7.)

Countryside argues that Plaintiff's claim against it fails because Plaintiff has not alleged that Plaintiff is a party to, or a third-party beneficiary of, the services contract, or that Hull Storey assigned its rights under that contract to Plaintiff.[6] (Doc. 8 at 5–6.) However, this argument ignores the fact that this is a subrogation action whereby "the insurer is put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer." *Zurich*, 248 F. Supp. 3d at 1286 (quotations and citation omitted). Although the Complaint clearly alleges that "[t]his is a subrogation action," Countryside fails to address the issue of subrogation at all in the Motion. (Doc. 1 at 1; Doc. 8.)

As set forth above, Plaintiff alleges that it insured Hull Storey, who was a party to the services contract. Additionally, by alleging that it received Hull Storey's rights to recover any payments made by it pursuant to its policy, Plaintiff has sufficiently alleged that it has conventional subrogation rights arising from its policy with Hull Storey. Thus, Plaintiff may pursue Hull Storey's right, as a party to the services contract, to recover from Countryside for breach of contract. Therefore, the undersigned recommends that Plaintiff has sufficiently stated a breach of contract claim against Countryside based on its conventional subrogation rights arising from its policy with Hull Storey.

---

[6] Countryside also argues that it is not a party to the services contract. (Doc. 8 at 5.) However, in light of Plaintiff's allegation regarding the transfer or novation of the subject contract set forth above, the undersigned recommends that this argument be rejected.

### B. Count III

In Count III, Plaintiff alleges a claim for common law indemnity against Countryside. (Doc. 1 at 7–8.) Countryside argues that Plaintiff has failed to state a claim against it because Plaintiff has not plausibly alleged that its insured, Hull Storey, was without active negligence or fault in the State Action. (Doc. 8 at 6–7.) Countryside also argues that Plaintiff has failed to allege the existence of a special relationship establishing vicarious, constructive, derivative, or technical liability between Hull Storey and Countryside as required to state a common law indemnity claim. (*Id.* at 7–8.) For the reasons set forth below, the undersigned recommends that these arguments be rejected.

Regarding common law indemnity:

> To state a claim for common law indemnity [under Florida law], a party must allege that he is without fault, that another party is at fault, and that a special relationship between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party. Indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be [no] indemnity between joint tortfeasors. If both parties are at fault, no matter how slight the fault of the party seeking indemnity, recovery for common law indemnity is precluded.

*Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp. 2d 1254, 1270 (M.D. Fla. 2013) (citations and quotations omitted).

In Count III, Plaintiff alleges that Countryside had undertaken the obligation

to perform under the services contract described above on the date of the subject accident; that Hull Storey was without active negligence or fault for the claims in the State Action; that Hull Storey was vicariously, constructively, derivately, or technically liable in the State Action for Countryside's sole negligence or fault; and that Plaintiff and/or Hull Storey was damaged as a result of Countryside's negligence or fault. (Doc. 1 at 7.)

Countryside argues that entry of final judgment against Hull Storey in the State Action establishes direct liability on the part of Hull Storey, and thus conclusively refutes Plaintiff's allegation that Hull Storey was without active negligence or fault in the State Action. (Doc. 8 at 7.) However, Florida law recognizes that a party who has been held directly liable, but is nevertheless without fault, may bring an indemnification claim against the party at fault. *See, e.g.*, *Daniel v. Morris*, 181 So. 3d 1195, 1198–99 (Fla. Dist. Ct. App. 2015) ("As BankFirst owed a nondelegable duty, it was directly liable for all damages resulting from the actions of Associated Investigators and Morris. . . . BankFirst had no fault and would have been permitted to seek indemnification against Associated Investigators and Morris."); *Mortg. Guar. Ins. Corp. v. Stewart*, 427 So. 2d 776, 779 (Fla. Dist. Ct. App. 1983) ("[I]t has been established that a defendant who has been held liable, without personal fault, to a business invitee for breach of a nondelegable duty to maintain his premises in a reasonably safe condition may recover [common law] indemnity against his negligent independent contractor hired to discharge the nondelegable duty."). Because direct

8

liability is not equivalent to fault, the subject judgment does not conclusively refute Plaintiff's allegation that Hull Storey was without fault.

Countryside also argues that the complaint in the State Action establishes that Plaintiff's liability was not vicarious. (Doc. 8 at 7–8.) However, the allegations of the complaint in the State Action are not controlling. *See Stewart*, 427 So. 2d at 780 ("[T]he law has always permitted a person to bring an indemnity claim quite apart from the characterization of his conduct in the original complaint filed by the injured party.").

Finally, Countryside argues that Plaintiff has failed to allege a special relationship between Plaintiff or Hull Story and Countryside as required.[7] "The term 'special relationship' merely describes a relationship which makes a faultless party only vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party at fault." *Diplomat Props. Ltd. P'ship v. Tecnoglass, LLC*, 114 So. 3d 357, 362 (Fla. Dist. Ct. App. 2013) (quotations and citation omitted). Thus, Plaintiff's liability in the State Action does not have to be vicarious. As stated by one court in the Middle District of Florida:

> Of the terms "vicarious," "constructive," "derivative" and "technical" liability, only "vicarious liability" is a recognized term of art, and it is typically used to describe liability imposed by agency law. The Florida Supreme Court's analysis in *Houdaille* strongly suggests that the other three

---

[7] As set forth in the prior section, Plaintiff is put in the position of Hull Storey in this subrogation action. Thus, Plaintiff need only allege a special relationship between Hull Storey and Countryside.

9

> terms, "constructive," "derivative," and "technical," are meant merely to capture the concept that the party seeking indemnity must be without fault.

*Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1379 (M.D. Fla. 2009). Because Plaintiff alleges that Hull Storey, who was without fault, was held vicariously, constructively, derivatively, or technically liable for Countryside's negligence and/or fault in the State Action, the undersigned recommends that Plaintiff has sufficiently stated a claim for common law indemnity against Countryside.

## IV. Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 8**) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, on November 30, 2017.

*[signature: Joel B. Toomey]*

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record